UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TYRUS MCNAIR,           ) | |
| ) | |
| Petitioner,           ) | |
| ) | Cause No.: 1:02-CR-12 |
| v.           ) | (1:05-CV-138) |
| ) | |
| UNITED STATES OF AMERICA,           ) | |
| ) | |
| Respondent.           ) | |

**OPINION AND ORDER**

This matter is before the court on the Motion Under 28 U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed by Petitioner Tyrus McNair ("McNair") on April 25, 2005.  Before the government filed a response to McNair's motion, McNair sent a letter to the court on June 15, 2005, which the court interpreted as a motion to amend and/or correct his original § 2255 petition.  Treating said letter as a motion, the court granted it by way of a docket entry on June 16, 2005, and instructed the Clerk of the Court to docket McNair's subsequent filing as an Amended Petition Under § 2255.

On July 7, 2005, McNair filed a "Supplemental Brief in Support of Motion for Relief Under 2255."  The government filed its response to the motion on July 14, 2005.  McNair then filed a "Reply Motion in Opposition to the Government's Response" on August 3, 2005.[1]  On August 9, 2005, the court received yet another letter from McNair, which the court also

---

[1] Despite McNair's inclusion of the word "motion" in the title of this document, it is clear that it is a reply brief filed in opposition to the government's response, and does not present any additional motions for the court's consideration.

instructed the Clerk to file of record in this case.[2] On August 15, 2005, the court received yet another letter from McNair, which was also filed and docketed in this case.[3] To the extent that any issues presented in this most recent letter may impact the pending motion, they will be considered and discussed herein.[4] For the reasons set forth herein, McNair's § 2255 motion is DENIED.

## PROCEDURAL BACKGROUND

Before addressing the merits of McNair's arguments, a rather detailed summary of the proceedings and history of this case are necessary.

**1. District Court Proceedings.**

McNair was charged by way of an indictment with conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846. The indictment also named a co-defendant, Kevin Streeter. McNair had an initial appearance in this court on February 14, 2002. Thereafter, Magistrate Judge Cosbey held status hearings on March 6 and April 24, 2002, to check the status of Streeter, who had not yet been apprehended. Streeter was eventually arrested in California on May 1, 2002, and was transferred to Indiana. On May 22,

---

[2] In this brief letter, McNair simply asks for the court's consideration of his § 2255 motion. He does not raise additional issues in this letter. Docket at 134.

[3] The letter of August 15, 2005, was interpreted as a supplement to Petitioner's reply brief. Docket at 135.

[4] Finally, on September 21, 2005, McNair filed what he titled a "Motion for Modification of Sentence." This motion, however, raises issues that are separate and apart from those raised in McNair's § 2255 motion and appears to be based on entirely different legal argument. By way of a docket entry on September 23, 2005, the court instructed the government to file a response to this latest motion within 30 days, and allowed McNair 15 days from receipt of that response in which to file a reply. Once any briefing is completed, that motion will be resolved in a separate written Order.

2002, Streeter had his initial appearance in this court and, on that same day, McNair was arraigned. The court set a jury trial for August 13, 2002.

In June of 2002 Streeter filed a motion to continue the trial, stating that he needed additional time to prepare a defense. At a hearing on June 24, 2002, the court granted Streeter's motion, over McNair's objection, and rescheduled the trial for September 24, 2002. On August 23, 2002, McNair filed a motion to dismiss the indictment alleging a violation of his rights under the Speedy Trial Act. Five days later, a grand jury returned a superseding indictment solely against McNair, alleging that between June 1, 1996, and May 31, 2001, he conspired to possess with intent to distribute more than five kilograms of cocaine. A hearing was held on August 30, 2002, to consider McNair's motion to dismiss. At that hearing, by agreement of the parties, the trial date was again rescheduled to October 28, 2002. Following briefing by the parties, the court entered a written order on September 25, 2002, denying McNair's motion.

On October 30, 2002, following a two-day trial, a jury found McNair guilty as charged in the superseding indictment. On June 10, 2003, after briefing by McNair and the government, the court issued a sentencing memorandum in which it concluded that McNair's term of imprisonment under the United States Sentencing Guidelines was 324 to 405 months.[5] On July 22, 2003, the court sentenced McNair to 360 months of imprisonment to be followed by five years of supervised release.

---

[5] In that sentencing order, the court found that the quantity of drugs attributable to McNair pursuant to U.S.S.G. § 2D1.1 ( the Drug Equivalency Tables) was in excess of 25,000 kilograms of marijuana, which resulted in a base offense level of 36. The court also found that a four-level enhancement pursuant to U.S.S.G. § 3B1.1 was warranted in the case due to McNair's leadership role in the drug conspiracy. These holdings resulted in a total offense level of 40 and a criminal history category of two, which resulted in the substantial Guideline range for imprisonment.

**2. Appellate Court Proceedings.**

On July 29, 2003, McNair filed a timely Notice of Appeal. The Seventh Circuit Court of Appeals affirmed McNair's conviction and sentence in an unpublished decision in *United States v. McNair*, 2004 WL 77911 (7th Cir. Ind.). McNair then filed a petition for certiorari with the U.S. Supreme Court, which was denied on May 17, 2004. McNair then filed a Motion to Recall the Mandate with the Seventh Circuit, arguing that pursuant to the decisions in *Blakely v. Washington*, 124 S.Ct. 2531 (2004) and *United States v. Booker*, 375 F.3d 508 (7th Cir. 2004), the sentence imposed on him violated his Sixth Amendment rights, since it was based in part on findings not made by a jury. The Seventh Circuit denied McNair's motion without prejudice, permitting him to refile it if doing so would be appropriate once the U.S. Supreme Court issued its ruling in the *Booker* case. McNair did indeed file another motion to recall the mandate after the Supreme Court issued *United States v. Booker*, 125 S.Ct. 738 (2005), but the Seventh Circuit denied it based on *McReynolds v. United States*, 397 F.3d 479 (7th Cir. 2005). McNair then filed a second petition for certiorari to the Supreme Court, and that petition was denied on May 31, 2005.

## DISCUSSION

Having failed to achieve success in any of his appellate court filings, McNair filed the present motion under § 2255. In this motion, McNair raises several issues, which can be summarized as follows:

    1. His trial counsel was ineffective during both pretrial and trial proceedings;

    2. His appellate counsel was ineffective at that level of his case;

    3. The sentence imposed on him is unconstitutional in that it violates his

Fifth and Sixth Amendment rights;

    4. Government witnesses at his trial offered testimony that conflicted with their pretrial statements to law enforcement; and,

    5. That he was wrongfully assessed two points in his criminal history category for driving without a license.

**1. Ineffective Assistance of Counsel.**[6]

McNair's ineffective assistance of counsel claim alleges that his trial counsel failed to file a motion to sever his case from that of his co-defendant, Kevin Streeter, failed to file a motion to suppress, and failed to conduct his defense adequately during trial. To make out a successful ineffective assistance of counsel claim, the petitioner must demonstrate that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced his defense that it deprived him of a fair trial. See *Strickland v. Washington*, 466 U.S. 668, 688-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because one must show both deficient performance and prejudice to prevail on an ineffective assistance of counsel claim, a failure to show one or the other will defeat the claim.

"With regard to the performance prong, [the] defendant must direct the court to the specific acts or omissions which form the basis of his claim. The court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance." *Fountain v. United States*, 211 F.3d 429, 434 (7th Cir. 2000). "Moreover, claims that an attorney was ineffective necessarily involve inquiries

---

[6] As will be discussed below, some of McNair's claims in this petition are procedurally barred. A claim of ineffective assistance of counsel, however, cannot be procedurally barred for failure to raise the issue on direct appeal, as is the case with most other issues. *See, Fuller v. United States*, 398 F.3d 644 (7th Cir. 2005) (citing *Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690 (2003)).

into an attorney's trial strategies, which in turn requires facts which usually are not contained in the trial record. As such, many trial determinations, like so many 'other decisions that an attorney must make in the course of representation[, are] a matter of professional judgment.'" *Id.* (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1382 (7th Cir.1991)). Thus, the Court must not second guess trial counsel, evaluating the conduct from counsel's perspective at the time, and indulging a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance, *United States v. Ashimi*, 932 F.2d 643, 648 (7th Cir.1991), all the while resisting the natural temptation to become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir.1990).

If a petitioner satisfies the performance prong, he must then fulfill the prejudice prong by demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Starnes*, 14 F.3d 1207, 1209-10 (7th Cir.1994). "In making the determination whether the specified errors resulted in the required prejudice, a court should presume ... that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

In this case, as stated above, McNair claims his trial counsel was ineffective since he or she did not file a motion to sever, did not file a motion to suppress, and did not conduct an adequate defense.[7] As to this last prong of his argument, McNair contends that counsel's

---

[7] McNair was represented by several lawyers during the course of these proceedings. He was represented, at various times, by Anthony Churchward, Charles Leonard, Robert Love, Linda Wagoner, and Michael P. Smith. Based on the pleadings he has submitted, it is not completely clear which attorney McNair claims was ineffective. However, it does not really matter, since McNair's claims of ineffective assistance of counsel whether they relate to pretrial, trial, or appellate proceedings, are without merit, regardless of whom he claims is the "most" responsible for alleged deficient performance.

6

performance at trial was deficient since counsel failed to raise proper objections, to question government witnesses, or to present witnesses in McNair's defense.

With regard to the alleged failure to file a motion to sever his case, McNair is procedurally barred from raising this issue in the present motion. This is because "[a] § 2255 motion is neither a recapitulation of nor a substitute for direct appeal." *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995)).

There are three types of issues that *cannot* be raised in a § 2255 motion. These include:

> 1) issues that were raised on direct appeal, absent a showing of changed circumstances;
>
> 2) non-constitutional issues that could have been raised on direct appeal but were not; and
>
> 3) constitutional issues that were not raised on direct appeal, unless the petitioner can show cause for the procedural default as well as actual prejudice from the failure to appeal.

*Daniels v. United States,* 26 F.3d 706, 711 (7th Cir. 1994) (quoting *Belford v. United States,* 975 F.2d 310, 313 (7th Cir. 1992)). Although *res judicata* does not apply in § 2255 proceedings, "the court may still exercise its discretion not to reconsider issues already decided at trial, on direct appeal, or in prior § 2255 proceedings." *Taylor v. United States,* 798 F.2d 271, 273 (7th Cir. 1986), *cert. denied,* 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 983 (1987).

McNair argues that the failure to file a motion to sever resulted in a 97-day delay of his trial, that is, a violation of the Speedy Trial Act, 18 U.S.C. § 3161, *et seq*. However, the Seventh Circuit has already rejected this argument, holding that McNair failed to show that he was prejudiced by any delay. *United States v. McNair*, 85 Fed.Appx. 532, 535 (7th Cir. 2004) (unpublished opinion). The mere fact that McNair attempts to recharacterize this Speedy Trial argument as one of ineffective assistance of counsel does not change this fact. Even if McNair

7

did ask his attorney to file a motion to sever his case, or if he had the understanding that such a motion would be filed and it wasn't, he cannot prove that he was prejudiced by the resulting delay in his trial. Therefore, this claim would have no merit even if it was not procedurally barred.

Next McNair claims his trial counsel was ineffective for having failed to file a motion to suppress. This, of course, raises a constitutional issue. However, as stated above, one type of issue that *cannot* be raised in a motion under § 2255 is a "constitutional issue[] that [was] not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal." *Belford*, 975 F.2d at 313. Even more fundamentally, however, as the government points out in its response, "in this case there was nothing to be suppressed–McNair made no admissions, there was no search warrant, there was no warrant-less arrest." Government's Response, p. 15. The government is correct, and a motion to suppress would have been fruitless (probably frivolous) under the circumstances of this case.

In addition, McNair makes no argument whatsoever with regard to the alleged failure to file such a motion. The only mention he makes on this issue is in his original petition, where on page five he asserts that "[c]ounsel failed to file a motion to suppress the evidence also of which was asked of him." Petitioner's Motion, docket at 122. In his various briefs and letters submitted in support of his petition, McNair makes no further mention of this issue and presents no argument or evidence to support it. Despite all this, he raises this as an example of the alleged ineffective assistance of his trial counsel. But McNair failed to raise any such issue on direct appeal, fails to offer any explanation for the failure to do so, and fails to demonstrate any actual prejudice from that failure. Again, the fact that McNair raises this issue in the context of

8

an ineffective assistance of counsel claim does not change the analysis. The claim is simply without merit.

The next prong of McNair's ineffective assistance of counsel claim is based on his allegation that "[d]uring the trial counsel failed to object and failed to fully cross-examine the witness and failed to call witnesses on my behalf as requested." *Id*. Once again, this conclusory statement in McNair's original petition is the only mention he makes of this claim in any of his pleadings. He does not state who the witnesses were that should have been called on his behalf, what they would have said in his defense, or even whether his attorney was aware of any such witnesses. Further, the record is clear that McNair's trial attorney, Charles Leonard, did in fact cross-examine government witnesses. A liberal interpretation of this claim by McNair would indicate that he is dissatisfied with his trial attorney's overall performance during trial. But conclusory statements such as this at best raise questions of trial strategy that cannot be second guessed by the court. *Menzer v. United States*, 200 F.3d 1000, 1003-1004 (7th Cir. 2000). McNair presents no evidence to support this allegation that his trial attorney was ineffective for having failed to call unnamed witnesses or for failing to cross-examine (or, perhaps, properly cross-examine) government witnesses. Even if such witnesses existed, McNair fails to demonstrate (or even to argue, other than by implication) how the failure to call them at trial amounted to prejudice. Therefore, he fails to raise a colorable issue that his counsel's performance "fell below an objective standard of reasonableness" or that "the deficient performance so prejudiced his defense that it deprived him of a fair trial." *Strickland*, 466 U.S. 668.

**2. Ineffective Assistance of Appellate Counsel.**

McNair also asserts that his appellate counsel was ineffective for having failed to raise

the issue of the ineffectiveness of trial counsel during McNair's appeal. McNair states that he "was deprived to [sic] effective assistance of counsel during the appellate stage, in violation of the Sixth Amendment[.]" "Amended" § 2255 Motion, docket at 129, page five. In his supplemental brief filed on July 7, 2005, McNair makes the following statement with regard to this claim: "Had Appellate Counsel raised this same issue on direct appeal in the context of ineffective assistance of counsel, the Seventh Circuit would have found counsel ineffective." Petitioner's Supplemental Brief, docket at 131, p. 3. The "same issue" to which McNair refers is, once again, the failure of his trial counsel to file a motion to sever in his case. *Id*. But this is nothing more than an attempt to raise the severance issue (or Speedy Trial issue, since they are really one and the same) in another context. This recharacterization of the issue does not help the Petitioner, however. Again, since the court of appeals has already found that McNair was not prejudiced by any delay which resulted from the failure to file a motion to sever, his claim fails.[8] For these reasons, McNair's claim that his appellate counsel was ineffective is meritless.

### 3. Violations of Fifth and Sixth Amendment Rights.

McNair also claims that his Fifth and Sixth Amendment rights were violated because "[t]he court used criteria to sentence me to a longer term of incarceration by facts not found by the jury or proven beyond a reasonable doubt, all of which was objected to by the petitioner." Original Motion, p. 5. In his petition, McNair does not mention the cases of *United States v.*

---

[8] As set forth in the procedural background section of this Order, the reason for the delay in trial was the fact that McNair's co-defendant had not been apprehended. In its response brief, the government points out that co-defendant Streeter was, in fact, apprehended within the 97-day period after McNair's initial appearance. Thus, given the time frame, it is highly unlikely that there would have even been time for McNair's attorney to file a motion to sever and for the court to rule on it before Streeter was apprehended. In addition, the government argues that there is no guarantee that such a motion would have been granted in the first place.

*Booker*, 125 S.Ct. 738 (2005), *Blakely v. Washington*, 124 S.Ct. 2531 (2004) or *Apprendi v. New Jersey*, 530 U.S. 466 (2000). However, in his supplemental brief filed on July 7 (docket at 131), McNair does in fact argue that his sentence was unconstitutionally enhanced and/or imposed, in violation of the United States Supreme Court's holdings in *Booker* and *Blakely*. Supplemental Brief, docket at 131, p. 3. It is clear that McNair is raising a "Booker" argument with regard to his sentence.

The *Booker* decision was handed down in January of 2005, and the Seventh Circuit has determined that it does *not* have any retroactive application to cases on collateral review. *McReynolds v. United States*, 397 F.3d 479 (7th Cir. 2005). Accordingly, McNair's argument fails. In addition, as was pointed out earlier in this Order, McNair has already presented this same argument to both the Seventh Circuit Court of Appeals and the United States Supreme Court. McNair's first Motion to Recall the Mandate filed with the Seventh Circuit was denied without prejudice pending the U.S. Supreme Court's decision in *Booker*, which was then pending. Once *Booker* was decided, McNair renewed his Motion to Recall the Mandate, which the Seventh Circuit denied based on *McReynolds*. McNair then filed his second petition for certiorari to the U.S. Supreme Court, which was also denied. Accordingly, McNair's argument that his sentence should be vacated pursuant to *Booker* is without merit.[9]

---

[9] In his supplemental brief addressing this issue, McNair attempts to argue that the *Booker* decision should somehow apply retroactively to his case since "the Seventh Circuit incorrectly denied McNair's direct appeal, which was based upon the holding in Apprendi–a holding that prospectively applies, decisions of Blakely and Booker/Fanfan are simply clarifications of what Apprendi has held for nearly five years, including the direct appeal in this case." Supplement Brief, docket at 131, p. 3. McNair also argues that "[t]his is especially so under the unusual circumstances of McNair's case, where the essence of McNair's current multifaceted Apprendi-Blakely-and-Booker/Fanfan [sic] issue was originally raised on McNair's direct appeal, only to be erroneously rejected based on a Constitutionally flawed interpretation of the Supreme Court's rulings in Apprendi-Blakely decisions." McNair's legal argument is

**4. Testimony of Government Witnesses and Criminal History Category.**

McNair also alleges that "government witnesses['] testimony at trial was contradicted by the 302's." Original Petition, p. 5. That is, he alleges that certain witnesses for the prosecution offered testimony that he claims contradicted pre-trial statements they had made to law enforcement. Finally, he argues that he should not have been assessed two points on his criminal history category by the United States Probation Office for an offense of driving without a license. *Id.*, p. 6.

The government correctly points out that these are non-constitutional issues that could have been, but were not, raised in McNair's direct appeal. As such, he is procedurally barred from raising them for the first time in his § 2255 petition. In addition, this court has specifically addressed these issues. The issue of the credibility of the witnesses at trial was addressed in this court's Sentencing Memorandum of June 10, 2003. See docket at 109, pp. 8-13. The issue of the assessment of criminal history points for McNair's driving offense was also addressed therein. *Id*. at p. 20. Nothing prevented McNair from raising these issues in his direct appeal, and he offers no excuse or explanation for not having done so. For all these reasons, these arguments are without merit.

One final point must be made. A petitioner who has a § 2255 motion denied can, under certain circumstances, appeal that denial. However, pursuant to 28 U.S.C. § 2253, a prisoner seeking appellate review of a district court's denial of a § 2255 motion must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1). Seventh Circuit Rule 22.1, which addresses

---

difficult to discern. However, even a very liberal interpretation of his "Booker" argument does not indicate that the Seventh Circuit somehow incorrectly denied his appeal, or that the principle enunciated in *Booker* should for some reason be applied retroactively to his case.

certificates of appealability, states in relevant part:

> The procedures of Fed.R.App.P. 22(b) apply to requests for certificates of appealability in actions under 28 U.S.C. § 2255....A district judge who concludes that the amendments to 28 U.S.C. § 2253(c) prevent that court from acting on the request for a certificate of appealability should nonetheless state how the judge would have ruled, were the court authorized to take dispositive action.

Circuit Rule 22.1(a) and (c). Thus, it falls to this court to determine whether a certificate of appealability should issue in the present case, or at least to state how it would rule on such a request.

Section 102 of the Anti-Terrorism and Effective Death Penalty Act (AEDPA), provides that a Certificate of Appealability may be issued only upon a "substantial showing of the denial of a constitutional right." 28 U.S.C. 2253. The Seventh Circuit has held that in order to obtain a Certificate of Appealability, "[a] petitioner...must . . . demonstrate that an issue is debatable among jurists of reason or that the questions 'deserve encouragement to proceed further.'" *Porter v. Gramley*, 112 F.3d 1308, 1312 (7th Cir. 1997) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4, 103 S.Ct. 3383, 3394-5 & n.4 (1983)).

The standard for determining whether to issue a Certificate of Appealability has been set forth by the United States Supreme Court as follows:

> [P]robable cause requires something more than the absence of frivolity [and] the standard [for issuance of a certificate of probable cause] is a higher one than the 'good faith' requirement of § 1915....[A] certificate of probable cause requires petitioner to make a 'substantial showing of the denial of a federal right....'Obviously the petitioner need not show that he should prevail on the merits. He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among

13

>jurists of reason; that a court could resolve the issues in a different manner; or that the questions are 'adequate to deserve encouragement to proceed further.'

*Id.* (internal quotations and citations omitted).

In this case, given the foregoing discussion, it cannot be said that the issues presented are debatable among jurist of reasons or that the questions presented in McNair's petition are adequate to deserve encouragement to proceed further. As such, any request for a Certificate of Appealability presented to this court will be denied.

## CONCLUSION

For the reasons set forth herein, the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed by Petitioner Tyrus McNair is hereby DENIED.

Date: September 26, 2005.

>    /s/    William C. Lee    
>        William C. Lee, Judge  
>        United States District Court